UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAWTELL PARTNERS, LLC,                    :

     Plaintiff,                          :
                                 CIVIL ACTION NO.
v.                                        :
                                 1:03-CV-3637-MHS
ADMIRAL INSURANCE COMPANY,      :

     Defendant,                          :

v.                                        :

VISY RECYLING, INC.,                      :

     Third-Party Defendant.              :

SAWTELL PARTNERS, LLC and                 :
JOBY PROPERTIES, LLC,
                             :

     Plaintiffs,                         :
                                 CIVIL ACTION NO.
v.                                        :
                                 1:05-CV-2078-MHS
AMERICAN GUARANTEE AND          :
LIABILITY INSURANCE
COMPANY, d/b/a ZURICH                     :

     Defendants.                         :

                                 :

## ORDER

There are several motions pending before the Court in Case No. 1:03-CV-3637 and in Case No. 1:05-CV-2078.   Although the Court has not consolidated these two cases, the facts in both cases overlap.   Therefore, the Court issues this one order setting forth the relevant facts in these cases and the Court's conclusions and rulings on motions in both cases.

## Background

Joby Properties, LLC ("Joby") owned property at 315 McDonough Boulevard, Atlanta, Georgia ("the property").   On October 10, 2000, Joby leased an outside storage area at the property to Visy Recycling, Inc. ("Visy") for the storage of cardboard.   The storage area consisted of a metal shed extended over a concrete slab.  The lease agreement required Visy to list Joby as an "additional loss payee" on an insurance certificate.

American Guarantee and Liability Insurance Company, d/b/a Zurich ("Zurich") issued Visy an insurance policy ("Zurich policy") for the period December 30, 2000, to December 31, 2001.  Pursuant to the lease agreement between Joby and Visy, Visy provided Joby with an insurance certificate for

AO 72A
(Rev.8/82)

the property naming Joby as an additional loss payee under the Zurich Policy.[1]

On May 22, 2001, Admiral Insurance Company ("Admiral") issued Joby a Property Insurance Policy ("Admiral policy") which provided insurance coverage for "direct physical loss" or "damage" to a building located at the property for the period from May 22, 2001, through May 22, 2002.

On October 30, 2001, a fire occurred at the west side of the McDonough Boulevard building on the property in an outside area where Visy stored its cardboard.   The Atlanta Fire Department responded to the fire and determined that the point of origin of the fire was in the center of two fifteen foot high stacks of cardboard under a metal overhang in the outside yard. After a follow-up investigation, the Atlanta Fire Department concluded that the most probable cause of the fire was that people who had been using the cardboard stacks as shelter may have been smoking or using the cardboard to make a fire to keep warm.

---

[1] The Certificate of Insurance referred to Joby as a "Certificate Holder."

On November 2, 2001, Joby notified Admiral of the date and nature of the loss pursuant to the Admiral policy. Also in November of 2001, Joby sent Admiral the lease agreement and the Certificate of Insurance.

On December 17, 2001, Admiral notified Visy of its investigation into the loss and requested that Visy provide Admiral with the name of the adjuster who was handling the claim under Visy's insurance and whether Visy's insurance carrier had accepted liability for the loss.

On March 26, 2002, Joby conveyed to Sawtell Partners, LLC, ("Sawtell") the property and all rights to insurance proceeds. On August 2, 2002, Joby assigned its rights to Sawtell pursuant to the lease agreement with Visy.

On August 6, 2003, counsel for Sawtell sent a demand letter to Visy requesting Visy indemnify Sawtell for its damages pursuant to the lease agreement. Sawtell requested that Visy submit a timely claim to Visy's insurer and provide Sawtell with copies of all insurance policies of Visy which may provide coverage for the loss.

4

On August 20, 2003 and August 28, 2003, Sawtell made a demand to Admiral for the payment of the loss pursuant to the Admiral policy.

On October 29, 2003, Sawtell sued Admiral in the State Court of Fulton County for breach of the insurance contract and for bad faith damages against an insurer.  On November 26, 2003, Admiral removed the case to this Court.[2] Admiral then filed a third-party complaint against Visy in this Court on December 10, 2003, alleging breach of certificate of insurance and/or additional coverage claim and joint liability.   Sawtell seeks insurance proceeds from Admiral under the Admiral policy.   Should Admiral be required to pay any judgment to Sawtell, Admiral seeks indemnity and contribution from Visy.

Also on October 29, 2003, Sawtell sued Visy in the State Court of Gwinnett County for breach of the lease agreement and negligence.  The State Court granted summary judgment for Visy on both claims, and the Georgia Court of Appeals affirmed.  Recently Sawtell filed a Petition for Writ of Certiorari to the Georgia Supreme Court.

---

[2] Case No. 1:03-CV-3637-MHS.

5

On July 15, 2005, Sawtell and Joby sued Zurich in this Court.[3] Sawtell and Joby request that the Court declare that Zurich has a duty to provide coverage and indemnification to them under the Zurich policy. Sawtell and Joby also claim that Zurich's failure to provide coverage and indemnification for the loss pursuant to the Zurich policy constitutes a breach of the Zurich policy and insurance certificate. Finally, Sawtell and Joby claim that Zurich was negligent for not fulfilling its duty to investigate the circumstances surrounding the loss to address their coverage under the Zurich policy.

Discussion

I.  Admiral's Motion for Reconsideration

Admiral moves the Court for reconsideration of its denial in part of Admiral's Motion for Summary Judgment as set forth in the Court's Order, dated November 10, 2005. Admiral argues that the very factual underpinning of the Court's decision regarding the supervisory sprinkler endorsement of the insurance policy is unsupported by the actual record or the deposition testimony.

---

[3] Case No. 1:05-CV-2078-MHS.

6

Pursuant to Local Rule 7.2(E), "[m]otions for reconsideration shall not be filed as a matter of routine practice." LR 7.2(E), ND Ga.  The decision to grant a motion for reconsideration is committed to the sound discretion of the district court.  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000).  Motions for reconsideration are to be filed only when "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).  "An error is not 'clear and obvious' if the legal issues are 'at least arguable.'"  United States v. Battle, 272 F. Supp. 2d 1354, 1358 (N.D. Ga. 2003) (quoting Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985)).  Motions for reconsideration are not appropriate to present the Court with arguments already heard and dismissed, to repackage familiar arguments, or to show the Court how it "could have done it better" the first time.  Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs., 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd 97 F.3d 1242 (11th Cir. 1996).

AO 72A
(Rev.8/82)

First, Admiral takes particular issue with the Court's language on page 5 of its Order.  The Court points out that this language was merely a summary of Sawtell's arguments as presented by Sawtell in its response brief.  It was not a finding of facts or a holding by the Court.

Second, Admiral reargues the claims it made in its reply brief to the Court.  The Court has already considered these arguments when originally ruling on the motion.

Third, Admiral claims that the "very factual underpinning of the Court's decision . . . is completely and absolutely unsupported by the actual record or the deposition testimony of Jim White and/or Lalon Crumley." Def. Admiral Ins. Co.'s Mot. for Recons. at 2.  The Admiral policy provided that no loss was covered if Joby failed to *maintain*, the sprinkler system; not monitor or supervise the sprinkler system as Admiral has repeatedly argued.[4]  Lulon

---

[4] The policy provided the following:
We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.
Property Insurance Policy, Form No. IL 04 15 04 98, "Protective Safeguards" at 2.  Contrary to
(continued...)

AO 72A
(Rev.8/82)

Crumley testified that he monitored the fire alarm system, the sprinkler system, and the compressors that operate the system. Crumley Dep. at 16. He further testified that approximately three weeks before the fire, Tom Hamil of Joby called him to take a look at the system in response to an alarm that had gone off. Id. at 47-48. The alarm was caused by a drop in pressure, and Crumley had to restart the compressor in order to pressurize the system. Id. at 47, 49-50.   Regarding this incident, Crumley also testified that he checked the sprinkler system three to four weeks before the fire when the alarm went off and at that time, the water was on. Id. at 31. Furthermore, Jim White testified that sometime in August or September of 2001 he looked at the gauges of the sprinkler system to see if they were still holding pressure on the system. White Dep. at pp. 54, 60. Viewed in the light most favorable to Sawtell, this deposition testimony along with the other evidence submitted to the Court created a genuine issue of material fact as to whether Joby/Sawtell failed to maintain the sprinkler system as required by the insurance policy.

---

[4](...continued)

counsels' statements, the Court notes that this specific form was not attached to the Complaint with the rest of the insurance policy but was discovered by the Court as Exhibit A to Mr. Hamil's declaration.

Accordingly, the Court concludes that Admiral has not met its burden under the standard for a motion for reconsideration, and therefore Admiral's motion for reconsideration is denied.

## II.   Visy's Motion for Summary Judgment

Admiral filed a third-party complaint against Visy for indemnity and contribution. Under Count 1, breach of certificate of insurance and/or additional coverage claim, Admiral contends that Visy breached lease agreement between Joby and Visy by failing to pursue a claim against Visy's insurance carrier. Admiral also contends that Visy's premature demolition and removal of all debris from the fire site spoiled the evidence and violated the terms of the lease agreement. In doing so, Visy contributed to a violation of the Admiral policy.

Under Count 2, joint liability, Admiral contends that Visy's negligent maintenance of the property including allowing vagrants to sleep/live in the area caused the fire. Admiral avers that Visy was also negligent for failing to maintain and/or repair the sprinkler system.

10

Finally, should Admiral be required to pay attorneys' fees and expenses of litigation, Admiral seeks attorneys' fees pursuant to O.C.G.A. §§ 13-6-11 and/or 33-4-6 from Visy because Admiral alleges that Visy has acted in bad faith, has been stubbornly litigious, and has caused Admiral unnecessary trouble and expense.

Visy now moves for summary judgment against Admiral on all claims. Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. Celotex, 477 U.S. at 323; Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir. 1990).  However, the movant is not required to

11

negate his opponent's claim.  The movant may discharge his burden by merely "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." <u>Celotex</u>, 477 U.S. at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324.  While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, <u>Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case. <u>Anderson</u>, 477 U.S. at 248.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. <u>Id.</u>  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a

12

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." <u>Anderson</u>, 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of <u>every</u> element material to that party's case so as to create a genuine issue for trial.

Visy argues that Admiral's claim of breach of certificate of insurance and/or additional coverage claim is unsupportable because (1) Admiral cannot assert this claim against Visy, the insured, (2) Admiral cannot assert breach of contract when it was not a party or third-party beneficiary to the lease agreement, and (3) Admiral cannot recover under the lease agreement because Visy did not cause the fire.

The lease agreement between Joby and Visy provided that Visy would provide an insurance certificate listing Joby as an additional loss payee and that Visy was responsible for any damages to the property as a result of its operations. Admiral claims that it has standing to sue on the lease

agreement as a third-party beneficiary because the lease agreement necessarily directly benefitted Joby's insurance carrier, Admiral. "In order for a third party to have standing to enforce a contract [in Georgia] it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." Armor Elevator Co. v. Hinton, 213 Ga. App. 27, 30 (1994). There is nothing in the lease agreement between Joby and Visy that references Admiral in any way or that indicates that the lease agreement was intended for Admiral's benefit. The certificate of insurance naming Joby as an additional loss payee which was required by the lease agreement is not evidence that Visy and Joby intended to benefit Admiral by their lease agreement.

Moreover, Admiral lacks standing to sue on the certificate of insurance. Sawtell/Joby, as the additional loss payee on the certificate of insurance, has standing to sue on the certificate of insurance, not Admiral. See Phoenix Ins. Co. v. Aetna Casualty & Surety Co., 120 GA. App. 122, 127 (1969). The certificate of insurance does not create standing for Admiral to bring a claim for indemnity against Visy. Admiral was not a party to the insurance agreement between Visy and Zurich and has not presented any evidence that

14

Visy and Zurich's insurance agreement was intended for Admiral's benefit as a third-party beneficiary.  Therefore, because Admiral was not listed as an additional loss payee on the certificate of insurance or was a party or third-party beneficiary of the insurance agreement, Admiral lacks standing to sue on the certificate of insurance or the insurance agreement between Visy and Zurich.

Finally, even assuming that Admiral had standing to sue for a breach of contract claim, Visy did not breach the contract.  The lease agreement provided that Visy was responsible for any damage to the property caused by its operations.  Admiral argues that Visy's operations, the storage of cardboard, led to the fire "because without such storage there would have been no vagrants, there would have [sic] no fire and the damages would have been non-existent." Admiral's Mem. in Opp'n to Third Party Def. Visy's Mot. for Summ. J. at 3. However, Admiral has also admitted that the cause of the fire is undetermined.  Id. at 2 ("the actual cause of the fire, i.e. the actual ignition source was not definitely determined").  Therefore, because it is undetermined whether Visy's operations caused the fire, Visy cannot be held liable under the lease agreement.

AO 72A
(Rev.8/82)

Under Admiral's Count 2 for negligence, Visy argues that it is entitled to summary judgment on Admiral's joint liability claim because neither Sawtell nor Admiral has presented any evidence of negligence. Admiral argues that Visy owed a general duty to the public to exercise reasonable care in the operation of its business. Admiral contends that Visy knew that there were people trespassing on the property, that these vagrants were trying to stay warm in the middle of winter, and that fire was a foreseeable event.

Under the negligence claim, Admiral must introduce evidence to establish a reasonable basis for the conclusion that it is more likely than not that the conduct of Visy was a cause in fact of the fire. Feazell v. Gregg, 270 Ga. App. 651, 655 (2004). However, a mere possibility that Visy caused the fire is not enough. Id. "[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." Id. Admiral has not presented any evidence that Visy caused the fire. Although Admiral contends that all theories of how the fire started center and depend upon Visy's storage of cardboard, Admiral has admitted that the cause of the fire is undetermined. Corrected Version of Admiral's Resp. and Statement of Disputed Material Facts and Theories of Recovery at ¶ 42 ("any causation

analysis of the fire is a matter of pure speculation"). Admiral has established nothing more than a mere possibility that Visy caused the fire.

Admiral contends that Visy should have foreseen that vagrants would trespass onto the property and cause property damage while trying to keep warm. "Encompassed within the concept of negligence is an element of forseeability, which need not be as to the specific injury suffered but as to some injury. However, the concept does not include foreseeability of remote or unusual events." Papp Clinic, P.A. v. Cash, 186 Ga. App. 444, 445 (1988). Here, Visy did not have an absolute duty to prevent fires on the property, and the mere happening of an unfortunate event, like a fire, does not authorize an inference of negligence. See La Petite Academy, Inc. v. Turner, 247 Ga. App. 360, 363 (2000); T.J. Morris Co. v Dykes, 197 Ga. App. 392, 395 (1990).

The Court concludes that Admiral has not presented sufficient evidence to permit the reasonable inference that Visy's alleged negligence was the proximate cause of the fire and that all other inconsistent conclusions are less probable. See Feazell, 270 Ga. App. at 655. Accordingly, Visy is entitled to summary judgment on Admiral's claim of negligence. See id. at 655-56; Papp Clinic, P.A., 186 Ga. App. at 445.

17

Finally, with regard to Admiral's claim for attorneys' fees, the Court has granted summary judgment to Visy on all of Admiral's claims, and therefore Visy is entitled to summary judgment on Admiral's claim for attorneys' fees. <u>Connell v. Houser</u>, 189 Ga. App. 158, 160 (1988) (when a party prevails on all claims, it necessarily follows that he is also entitled to summary judgment on attorneys' fees). Accordingly, the Court grants Visy's motion for summary judgment as to all claims.

III. **Zurich's Motion for Summary Judgment & Sawtell and Joby's Motion to Consolidate Cases**

Zurich moves for summary judgment against Sawtell and Joby. Zurich argues that the Zurich policy provided that any legal action against it under the Zurich policy must be brought within two (2) years after fire occurred. Zurich argues that Sawtell/Joby filed their lawsuit on July 15, 2005, more than two (2) years after the fire occurred on October 30, 2001. Sawtell/Joby argue in response that Zurich is estopped from asserting the two-year limitations provision in the Zurich policy.

18

The Zurich policy contained the following provision:

Legal Action Against Us
No one may bring a legal action against us under this policy
unless:
1. There has been full compliance with all of the terms of this
policy; and
2. The action is brought within two (2) years after the date on
which the direct physical loss or damage occurred.

Exh. A to Zurich Compl. at Q.  Such a limitation provision is valid and

enforceable in Georgia.  Parks v. State Farm Gen. Ins. Co., 238 Ga. App. 814,

816 (1999).


Certain conduct by the insurer may amount to a waiver of the

limitations period or may estop the insurer from asserting the two-year

limitation as a defense.  Aiken v. Northwestern Mutual Ins. Co., 106 Ga. App.

220, 221 (1962).  A waiver may be implied when "investigations, negotiations,

and assurances by the insurance company up to and past the period of

limitation . . . led the insured to believe the limitation would not apply."

Modern Carpet Industries, Inc. v. Factory Ins. Assoc., 125 Ga. App. 150, 151

(1971); see also Brookins v. State Farm Fire and Casualty Co., 529 F. Supp.

386, 392-93 (S.D. Ga. 1982).  The insurance company may be estopped from

relying on the limitations provision when it wrongfully withholds the policy

from the insured.  Lanier v. Coastal States Life Ins. Co., 106 Ga. App. 802,

804 (1962) (citing Union Fire Ins. Co. of Paris v. Stone, 41 Ga. App. 49 (1930)).   Such an estoppel requires an affirmative act of concealment which is evidence that the insurance company is not fulfilling its duty of utmost fair dealing to the insured. Brookins, 529 F. Supp. at 393.

Viewing the facts in the light most favorable to Sawtell/Joby, shortly after November of 2001, Tom Hamil of Joby sent Brian O'Connor, an adjuster investigating the loss for Admiral, the Certificate of Insurance given to Joby by Visy. The Certificate of Insurance was issued by Marsh USA ("Marsh"), an insurance broker. O'Connor contacted Marsh, and Marsh advised him that it had notified Zurich of the fire and resulting loss. On January 17, 2002, O'Connor spoke with Pete Hanrahan at Zurich who stated that he would review the case and get back to O'Connor regarding Zurich's position. In April of 2002, O'Connor spoke with Wanda Hall at Marsh who informed him that Marsh was in discussions with Zurich and Visy about coverage for the loss.   O'Connor gave the information he received about Zurich's investigation to Hamil at Joby. Although Hamil believed that Visy's insurers would handle coverage for the loss from the fire, Joby never received definite information from Visy's insurers, or from any other source, regarding whether Visy's insurers would cover Joby's and Sawtell's damages. Finally,

Sawtell/Joby did not receive a copy of the Zurich policy from Visy until March of 2005.

There is nothing in the evidence to suggest that Zurich made any sort of investigations, negotiations, or assurances to lead Sawtell/Joby to believe that the limitations provision in the Zurich policy would not apply. See General Ins. Co. v. Lee Chocolate Co., 97 Ga. App. 588, 589 (1958). Although Zurich never communicated any decision about the claim to Sawtell/Joby, there is no evidence to suggest that Zurich misled Sawtell/Joby or lulled or prevented them from bringing the action within the stipulated time. Modern Carpet Industries, Inc., 125 Ga. App. at 151; Aiken, 106 Ga. App. at 223; General Ins. Co., 97 Ga. App. at 589 (where plaintiff testified that he was never notified that the claim had been denied and plaintiff's attorney wrote a letter to the insurer concerning the claim but never received a reply from the insurer, no waiver of one-year limitations provision).

Moreover, according to O'Connor, Sawtell/Joby last heard about Zurich's work on the claim in April of 2002. Yet, Sawtell/Joby waited until over three years later in July of 2005 to file the claim against Zurich. Sawtell/Joby claims that it did not file suit until 2005 because it was only in

21

March of 2005 after numerous requests to Visy that Sawtell/Joby was finally able to obtain a copy of the Zurich insurance policy. However, Sawtell/Joby always held the Certificate of Insurance which listed Zurich as an insurance company affording coverage[5] and knew as early as December of 2001 that Zurich was involved with the claim. Thus, Sawtell/Joby has offered no valid explanation why it waited almost four years after the fire to file a lawsuit against Zurich. See Modern Carpet Industries, Inc., 125 Ga. App. at 151.

There is also no evidence that Zurich wrongfully withheld a copy of the policy from Sawtell/Joby or committed an affirmative act of concealment of the policy. See Lanier, 106 Ga. App. at 804-05. Unlike the plaintiff in Stone, Sawtell/Joby never requested a copy of the policy from Zurich, and Zurich never refused to give one. Zurich's failure to deliver the policy does not amount to a tacit refusal to deliver the policy. See Schoonover v. Am. Family Ins. Co., 214 Ill. App. 3d 33 (4th Dist. 1991).[6] Therefore, it cannot be said that Zurich willfully or wrongfully withheld the policy from Sawtell/Joby. See Brookins, 529 F. Supp. at 394; see also Young v. Seven Bar Flying Service,

---

[5] The Certificate of Insurance specifically listed American Guarantee & Liability Insurance Company as one company affording coverage.

[6] Implied overruling recognized on other grounds by Kerker v. Elbert, 261 Ill. App. 3d 924 (4th Dist. 1994).

22

101 N.M. 545, 548 (1984) (insurance company's failure to provide loss payee a copy of the insurance policy did not result in a waiver of the limitations provision or estop the insurance company from asserting such a provision). Accordingly, the Court grants Zurich's motion for summary judgment.  Id.; Modern Carpet Industries, Inc., 125 Ga. App. at 152; Aiken, 106 Ga. App. at 223.

Having granted summary judgment to Zurich on all claims, the Court denies as moot Sawtell & Joby's motion to consolidate cases.

IV.  Sawtell's Motion for Leave to File an Amended Complaint

Sawtell moves for leave to file an amended complaint and add supplemental claims pursuant to Fed. R. Civ. P. 14(a) and 15(d).  Sawtell seeks to add a claim of constructive fraud and a claim for breach of implied duty of good faith against Visy for Visy's failure to provide copies of Visy's insurance policies to Sawtell/Joby.

The Court denies Sawtell's motion for leave to file an amended complaint.  First, Sawtell claims that it requested copies of the insurance policy as early as August 6, 2003, and it filed its complaint against Admiral

23

on October 29, 2003.  Rule 15(d) permits plaintiff to serve a supplemental pleading setting forth transactions or occurrences which have happened since the date of the pleading sought to be supplemented.  Sawtell cannot add supplemental claims against Visy pursuant to Rule 15(d) because the alleged failure to provide Sawtell with the requested copies of the insurance policy occurred before the filing of the original complaint.

Second, whether proceeding under Rules 14(a),[7] 15(a),[8] or 15(d),[9] the Court retains discretion in allowing Sawtell to amend its complaint to add supplemental claims.  The Court finds that Sawtell has been aware of these claims for many months and to allow it to assert these claims now when this case is in its later stages would unduly prejudice Visy.

Third, as the basis for its request to supplement, Sawtell argues that if Zurich seeks to place responsibility on Visy for failing to provide the policy,

---

[7] 6 Charles Alan Wright & Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 1443 (2d ed. 2005).

[8] The standards for review pursuant to Rule 15(d) and Rule 15(a) involve only a technical distinction and slight differences.  Ala. v. United States Army Corps of Eng'rs, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005).

[9] Fed. R. Civ. P. 15(d) provides that the Court may permit the party to serve a supplemental pleading "upon such terms as are just."

Sawtell should have the opportunity to assert those claims against Visy. Zurich does not place responsibility on Visy for failing to provide the policy but rather places that responsibility on Sawtell.  Given that the Court has granted summary judgment to Zurich, the issue of whether Zurich is trying to place blame on Sawtell for not requesting the policies is now moot.

AO 72A
(Rev.8/82)

Conclusion

For the foregoing reasons, in Case No. 1:03-CV-03637-MHS, the Court DENIES Admiral's First Motion for Reconsideration [#49]; GRANTS Visy's Motion for Summary Judgment [#50]; DENIES Sawtell's Motion for Leave to File Amended Complaint [#52]; DENIES AS MOOT Sawtell's Motion to Consolidate Cases [#53]; and GRANTS Visy's Motion for Leave to File Surreply Brief [#61].

For the foregoing reasons, in Case No. 1:05-CV-0278-MHS, the Court GRANTS American Guarantee and Liability Insurance Company's (Zurich) Motion for Summary Judgment [#11]; GRANTS Sawtell's Motion for Leave to File Surreply [#16]; DENIES AS MOOT Sawtell's Motion to Consolidate Cases [#17]; and DISMISSES this action.

IT IS SO ORDERED, this 27 day of March, 2006.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

26